**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>POTTSVILLE OPERATIONS, LLC, *et al.*,[1]<br><br>Debtors. | Case No.: 24-70418-JAD<br><br>Chapter 11<br><br>(Jointly Administered) |
| Pottsville Liquidating Trust, on behalf of the Debtors,<br><br>Plaintiff,<br><br>-vs-<br><br>CARE PAVILION OPERATING LLC; CLIVEDEN OPERATING, LLC; MAPA OPERATING LLC; MAPLEWOOD OPERATING, LLC; MILTON OPERATING, LLC; PARKHOUSE OPERATING, LLC; TUCKER OPERATING, LLC; WATSONTOWN OPERATING LLC; and YORK OPERATING, LLC,<br><br>Defendants. | Adv. Pro. No: 26-_____-JAD |

**COMPLAINT**

The Pottsville Liquidating Trust (the "Trust") of Pottsville Operations, LLC, Pottsville Propco, LLC, Hampton House Operations, LLC, Hampton House Propco, LLC, Kingston Operations, LLC, Kingston Propco, LLC, Williamsport North Operations, LLC, Williamsport

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Pottsville Operations, LLC (9467); Pottsville Propco, LLC (8685); Hampton House Operations, LLC (8969); Hampton House Propco, LLC (7258); Kingston Operations, LLC (1787); Kingston Propco, LLC (8562); Williamsport North Operations, LLC (9927); Williamsport Propco, LLC (2039); Williamsport South Operations, LLC (0298); Yeadon Operations, LLC (9296); and Yeadon Propco, LLC (5785) (collectively the "Debtors", and the Debtors' chapter 11 cases are collectively referred to as the "Chapter 11 Cases"). The Debtors' mailing address is 425 West New England Avenue, Suite 300, Winter Park, Florida 32789.

Propco, LLC, Williamsport South Operations, LLC, Yeadon Operations, LLC, and Yeadon Propco, LLC (collectively, the "Debtors") hereby files this complaint (the "Complaint") on behalf of the estates of the Debtors against: (i) Care Pavilion Operating LLC ("Care Pavilion"), (ii) Cliveden Operating, LLC ("Cliveden"), (iii) MAPA Operating LLC ("MAPA"), (iv) Maplewood Operating, LLC ("Maplewood"), (v) Milton Operating, LLC ("Milton"), (vi) Parkhouse Operating, LLC ("Parkhouse"), (vii) Tucker Operating, LLC ("Tucker"), (viii) Watsontown Operating LLC ("Watsontown"), and (ix) York Operating, LLC ("York") (each a "Defendant" and, collectively, the "Defendants"), to (i) avoid and recover certain transfers made by the Debtors to the Defendants in the one year before the Debtors commenced the above-captioned bankruptcy cases, pursuant to sections 544, 547, 548, 550 and 551 of title 11 of the United States Code (the "Bankruptcy Code"); and (ii) disallow any and all claims held by the Defendants against the Debtors pursuant to section 502(d) and (j) of the Bankruptcy Code. In support of this Complaint, the Trust alleges the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Pursuant to the applicable Standing Order of Reference of the U.S. District Court for the Western District of Pennsylvania (the "Court"), this proceeding has been referred to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The Trust consents to the entry of judgment or final orders with respect to this adversary proceeding if it is determined that this Court would lack Article III jurisdiction to enter judgment or final orders absent consent of the parties.

## THE PARTIES

5. On August 27, 2026, pursuant to the Plan (as defined below), the Trust was established for the benefit of holders of general unsecured claims against the Debtors entitled to receive a distribution pursuant to the terms of the Plan. The Trust, as Plaintiff, brings this action derivatively on behalf of and for the benefit of the Debtors' estates.

6. Upon information and belief, Care Pavilion is a limited liability company with its principal place of business at 6212 Walnut Street, Philadelphia, PA 19139. Care Pavilion is an insider of the Debtors under the definition set forth in 11 U.S.C. § 101(31) and applicable federal common law because Defendant is a statutory insider by virtue of its status as an affiliate of the Debtors.

7. Upon information and belief, Cliveden is a limited liability company with its principal place of business at 6400 Greene Street, Philadelphia, PA 19119. Cliveden is an insider of the Debtors under the definition set forth in 11 U.S.C. § 101(31) and applicable federal common law because Defendant is a statutory insider by virtue of its status as an affiliate of the Debtors.

8. Upon information and belief, MAPA is a limited liability company with its principal place of business at 6212 Walnut Street, Philadelphia, PA 19139. MAPA is an insider of the Debtors under the definition set forth in 11 U.S.C. § 101(31) and applicable federal common law because Defendant is a statutory insider by virtue of its status as an affiliate of the Debtors.

9. Upon information and belief, Maplewood is a limited liability company with its principal place of business at 125 W. School House Lane, Philadelphia, PA 19144. Maplewood is an insider of the Debtors under the definition set forth in 11 U.S.C. § 101(31) and applicable federal common law because Defendant is a statutory insider by virtue of its status as an affiliate of the Debtors.

10. Upon information and belief, Milton is a limited liability company with its principal place of business at 743 Mahoning Street, Milton, PA 17847. Milton is an insider of the Debtors under the definition set forth in 11 U.S.C. § 101(31) and applicable federal common law because Defendant is a statutory insider by virtue of its status as an affiliate of the Debtors.

11. Upon information and belief, Parkhouse is a limited liability company with its principal place of business at 1600 Black Rock Road, Royersford, PA 19468. Parkhouse is an insider of the Debtors under the definition set forth in 11 U.S.C. § 101(31) and applicable federal common law because Defendant is a statutory insider by virtue of its status as an affiliate of the Debtors.

12. Upon information and belief, Tucker is a limited liability company with its principal place of business at 1001 Wallace Street, Philadelphia, PA 19123. Tucker is an insider of the Debtors under the definition set forth in 11 U.S.C. § 101(31) and applicable federal common law because Defendant is a statutory insider by virtue of its status as an affiliate of the Debtors.

13. Upon information and belief, Watsontown is a limited liability company with its principal place of business at 245 E. 8th Street, Watsontown, PA 17777. Watsontown is an insider of the Debtors under the definition set forth in 11 U.S.C. § 101(31) and applicable federal common law because Defendant is a statutory insider by virtue of its status as an affiliate of the Debtors.

14. Upon information and belief, York is a limited liability company with its principal place of business at 7101 Old York Road, Philadelphia, PA 19126. York is an insider of the Debtors under the definition set forth in 11 U.S.C. § 101(31) and applicable federal common law because Defendant is a statutory insider by virtue of its status as an affiliate of the Debtors.

## FACTUAL ALLEGATIONS

### I. General Allegations and Case History

15. On October 15, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court.

16. The Debtors owned and operated several nursing home facilities in Pennsylvania and filed the Chapter 11 Cases to restructure their existing obligations and evaluate strategic alternatives to maximize value for the benefit of their bankruptcy estates and to ensure continuing care to the residents of their nursing home facilities.

17. On October 25, 2024, the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").

18. On January 15, 2025, the Bankruptcy Court authorized the sale of substantially all of the Debtors' assets (the "Sale") pursuant to the *Order (A) Approving Sale of Substantially All of the Pottsville Debtors' Assets, Other Than Accounts, Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 557].

19. On November 14, 2025, the Committee filed the *Second Amended Chapter 11 Plan of Liquidation* [Docket No. 1710] (the "Plan") along with the *Second Amended Disclosure Statement* [Docket No. 1711] (the "Disclosure Statement"). The Plan provides, among other things, that the Liquidating Trust "shall have standing on behalf of the Debtors and the Estates for the purposes of investigating, pursuing, prosecuting, settling, collecting, litigating, and/or recovering any Pottsville Liquidating Trust Assets that the Debtors or the Estates have or may pursue, subject to the provisions of this Plan." Plan, § 6.9.

20. On April 30, 2026, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Derivative Standing and Authority to*

*Prosecute and Settle Claims on Behalf of the Debtors' Estate* [Docket No. 2135] (the "Committee Standing Motion") seeking authority to pursue causes of action on behalf of the Debtors' estates.

21. On May 21, 2026, the Court entered an order granting the Committee Standing Motion. *See* Docket No. 2171.

22. On August 11, 2026, the Court conducted a hearing on confirmation of the Plan and final approval of the Disclosure Statement. On August 12, 2026, the Court entered the order confirming the Plan and approving the Disclosure Statement on a final basis [Docket No. 2374] (the "Confirmation Order"). The Confirmation Order provides that "[u]pon the Effective Date, all of the Pottsville Liquidating Trust Assets shall vest in the Liquidating Trust . . ." Confirmation Order, ¶ 35.

23. On August 27, 2026, the Plan became effective. *See* Docket No. 2408. Accordingly, the Trust was vested with standing to pursue causes of action on behalf of the Debtors on August 27, 2026. In preparing this Complaint, the Trust reviewed the Debtors' books and records which had previously been provided to the Committee and which the Committee, in turn, provided to the Trust. Upon information and belief, such information provided by the Debtors did not contain records for all transfers that could potentially be avoided and recovered under applicable law and, accordingly, the Trust reserves the right to amend this Complaint as necessary or appropriate.

24. During the one year before the Petition Date (the "Preference Period"), the Debtors continued to operate their businesses, including the transfer of property, either by checks, cashier's checks, wire transfers, ACH transfers, direct deposits, or through other similar means, to various individuals and entities with whom the Debtors conducted business.

25. As of and prior to the Petition Date, and at all other relevant times for purposes of this Complaint, the Debtors were and remained insolvent, including, but not limited to, because (i) the Debtors were unable to pay their debts when they became due; (ii) the Debtors' liabilities exceeded the value of their assets, as evidenced by the Schedules and Statements of Financial Affairs filed in the Chapter 11 Cases; and (iii) the consideration to be paid for the assets in the Sale is less than the Debtors' outstanding debts as of the Petition Date.

26. The Defendants, collectively or a portion thereof, contain a unity of interest and ownership as set forth in corporate ownership statements filed in their respective Chapter 11 Cases.

27. The Defendants, collectively or a portion thereof, commingled funds and assets and failed to maintain adequate books and records with respect to the basis of the transfers with the Debtors (collectively, the "Transfers"), corporate authorization for the same, or any real market-value for such Transfers.

28. The Defendants, collectively or a portion thereof, were subject to the control of the same owners, management, or key personnel, such that the Defendants, collectively or a portion thereof, were instrumentalities of one another or for the benefit of their apparent ultimate owners.

29. During the course of this proceeding, the Trust may learn of additional Transfers made to the Defendants that are avoidable under the Bankruptcy Code or applicable state law, or may discover additional information regarding the Defendants' defenses.

## II. Specific Allegations

a. Care Pavilion Operating LLC

30. Care Pavilion is a statutory insider of the Debtors pursuant to 11 U.S.C. § 101(31) because it is an affiliate of the Debtors. The Debtors and Care Pavilion also share common officers, directors, and managers who simultaneously held formal management and control positions at both

entities at the time of the Transfers. Consequently, Care Pavilion is a statutory insider because it is managed and controlled by individuals who are themselves statutory insiders of the Debtors.

31. Upon information and belief, Care Pavilion and the Debtors did not do business at arm's length. The Debtors regularly issued payments to Care Pavilion for goods and/or services at grossly inflated, above-market rates. The Trust is unaware of any formal, written, or arm's-length negotiated contracts governing these arrangements. Instead, the interlocking insiders utilized their dual control to unilaterally siphon cash from the Debtors to Care Pavilion to the detriment of the Debtors' estates and legitimate creditors.

32. Upon information and belief, prior to the Petition Date and during the Preference Period, the Debtors and Care Pavilion engaged in transactions in which Care Pavilion provided services and/or goods to one or more of the Debtors, and received payment from the Debtors while the Debtors were insolvent.

33. Specifically, the Trust—based on information from the Debtors' books and records—has determined that:

a. During the Preference Period one or more of the Debtors transferred monies to Care Pavilion totaling **$2,778,124.50** (each a "Care Pavilion Preferential Transfer" and, collectively, the "Care Pavilion Preferential Transfers"). The Transfers are set forth in specific detail on **Exhibit A** attached hereto.

b. During the two years preceding the Petition Date, the Debtors made certain transfers (each a "Care Pavilion Two Year Transfer" and, collectively, the "Care Pavilion Two Year Transfers") to Care Pavilion totaling **$5,263,827.59**. The Two Year Transfers are set forth in specific detail on **Exhibit A** attached hereto.

c. During the four years preceding the Petition Date, the Debtors made certain transfers (each a "Care Pavilion Four Year Transfer" and, collectively, the "Care Pavilion Four Year Transfers", and together with the Preferential Transfers and the Two Year Transfers, the "Care Pavilion Transfers") to Care Pavilion totaling **$5,263,827.59**. The Four Year Transfers are set forth in specific detail on **Exhibit A** attached hereto.

34. The first page of **Exhibit A** contains a summary sheet showing total transfers from the Debtors to Care Pavilion (outflows) and transfers from Care Pavilion to the Debtors (inflows). The term Care Pavilion Transfers refers to the transfers from the Debtors to Care Pavilion, described in **Exhibit A** as outflows. The Committee requested from the Debtors and certain insiders the basis for all of the Care Pavilion Transfers and the inflows set forth on **Exhibit A** but did not receive any explanation. Thus, the extent to which any such inflows provide a defense to claims in this Complaint is subject to discovery and proof.

35. The Debtors scheduled certain amounts owed to Care Pavilion which, as of the date of filing this Complaint, bear the following current claim amounts: $0.00, $0.00, and $0.00 [Schedule Nos. 2662950, 2663006, and 2663025] (the "Care Pavilion Claims").

36. The Trust reserves the right to amend this Complaint to include information including the following: (i) further information regarding the Care Pavilion Transfers, including additional Care Pavilion Transfers, made to Care Pavilion, (ii) modifications of Care Pavilion's legal name, (iii) additional defendants liable for the Care Pavilion Transfers, and (iv) additional causes of action (*e.g.*, but not exclusively, sections 542, 544, 545, and 548 of the Bankruptcy Code, and/or related state-law causes of action), that may become known to the Trust at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to this Complaint.

37. Notwithstanding any potential defenses to the Care Pavilion Transfers that are known or knowable by the Trust based on its due diligence to date, pursuant to section 547(g) of the Bankruptcy Code Care Pavilion bears the burden of proving the nonavoidability of any Care Pavilion Transfer. However, prior to filing this Complaint, the Trust conducted due diligence into

Care Pavilion's potential defenses to the Care Pavilion Transfers, which included reviewing the Debtors' available books and records.

b. Cliveden Operating, LLC

38. Cliveden is a statutory insider of the Debtors pursuant to 11 U.S.C. § 101(31) because it is an affiliate of the Debtors. The Debtors and Cliveden also share common officers, directors, and managers who simultaneously held formal management and control positions at both entities at the time of the Transfers. Consequently, Cliveden is a statutory insider because it is managed and controlled by individuals who are themselves statutory insiders of the Debtors.

39. Upon information and belief, Cliveden and the Debtors did not do business at arm's length. The Debtors regularly issued payments to Cliveden for goods and/or services at grossly inflated, above-market rates. The Trust is unaware of any formal, written, or arm's-length negotiated contracts governing these arrangements. Instead, the interlocking insiders utilized their dual control to unilaterally siphon cash from the Debtors to Cliveden to the detriment of the Debtors' estates and legitimate creditors.

40. Upon information and belief, prior to the Petition Date and during the Preference Period, the Debtors and Cliveden engaged in transactions in which Cliveden provided services and/or goods to one or more of the Debtors, and received payment from the Debtors while the Debtors were insolvent.

41. Specifically, the Trust—based on information from the Debtors' books and records—has determined that:

a. During the Preference Period one or more of the Debtors transferred monies to Cliveden totaling **$0.00** (each a "Cliveden Preferential Transfer" and, collectively, the "Cliveden Preferential Transfers"). The Transfers are set forth in specific detail on **Exhibit B** attached hereto.

b. During the two years preceding the Petition Date, the Debtors made certain transfers (each a "Cliveden Two Year Transfer" and, collectively, the "Cliveden

Two Year Transfers") to Cliveden totaling **$534,306.71**. The Two Year Transfers are set forth in specific detail on **Exhibit B** attached hereto.

c. During the four years preceding the Petition Date, the Debtors made certain transfers (each a "Cliveden Four Year Transfer" and, collectively, the "Cliveden Four Year Transfers", and together with the Preferential Transfers and the Two Year Transfers, the "Cliveden Transfers") to Cliveden totaling **$567,653.02**. The Four Year Transfers are set forth in specific detail on **Exhibit B** attached hereto.

42. The first page of **Exhibit B** contains a summary sheet showing total transfers from the Debtors to Cliveden (outflows) and transfers from Cliveden to the Debtors (inflows). The term Cliveden Transfers refers to the transfers from the Debtors to Cliveden, described in **Exhibit B** as outflows. The Committee requested from the Debtors and certain insiders the basis for all of the Cliveden Transfers and the inflows set forth on **Exhibit B** but did not receive any explanation. Thus, the extent to which any such inflows provide a defense to claims in this Complaint is subject to discovery and proof.

43. The Debtors scheduled certain amounts owed to Cliveden which, as of the date of filing this Complaint, bear the following current claim amounts: $0.00, $0.00, and $0.00 [Schedule Nos. 2662997, 2663012, and 2663022] (the "Cliveden Claims").

44. The Trust reserves the right to amend this Complaint to include information including the following: (i) further information regarding the Cliveden Transfers, including additional Cliveden Transfers, made to Cliveden, (ii) modifications of Cliveden's legal name, (iii) additional defendants liable for the Cliveden Transfers, and (iv) additional causes of action (*e.g.*, but not exclusively, sections 542, 544, 545, and 548 of the Bankruptcy Code, and/or related state-law causes of action), that may become known to the Trust at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to this Complaint.

45. Notwithstanding any potential defenses to the Cliveden Transfers that are known or knowable by the Trust based on its due diligence to date, pursuant to section 547(g) of the Bankruptcy Code Cliveden bears the burden of proving the nonavoidability of any Cliveden Transfer. However, prior to filing this Complaint, the Trust conducted due diligence into Cliveden's potential defenses to the Cliveden Transfers, which included reviewing the Debtors' available books and records.

c. <u>MAPA Operating LLC</u>

46. MAPA is a statutory insider of the Debtors pursuant to 11 U.S.C. § 101(31) because it is an affiliate of the Debtors. The Debtors and MAPA also share common officers, directors, and managers who simultaneously held formal management and control positions at both entities at the time of the Transfers. Consequently, MAPA is a statutory insider because it is managed and controlled by individuals who are themselves statutory insiders of the Debtors.

47. Upon information and belief, MAPA and the Debtors did not do business at arm's length. The Debtors regularly issued payments to MAPA for goods and/or services at grossly inflated, above-market rates. The Trust is unaware of any formal, written, or arm's-length negotiated contracts governing these arrangements. Instead, the interlocking insiders utilized their dual control to unilaterally siphon cash from the Debtors to MAPA to the detriment of the Debtors' estates and legitimate creditors.

48. Upon information and belief, prior to the Petition Date and during the Preference Period, the Debtors and MAPA engaged in transactions in which MAPA provided services and/or goods to one or more of the Debtors, and received payment from the Debtors while the Debtors were insolvent.

49. Specifically, the Trust—based on information from the Debtors' books and records—has determined that:

a. During the Preference Period one or more of the Debtors transferred monies to MAPA totaling **$27,738,437.14** (each a "MAPA Preferential Transfer" and, collectively, the "MAPA Preferential Transfers"). The Transfers are set forth in specific detail on **Exhibit C** attached hereto.

b. During the two years preceding the Petition Date, the Debtors made certain transfers (each a "MAPA Two Year Transfer" and, collectively, the "MAPA Two Year Transfers") to MAPA totaling **$66,119,836.99**. The Two Year Transfers are set forth in specific detail on **Exhibit C** attached hereto.

c. During the four years preceding the Petition Date, the Debtors made certain transfers (each a "MAPA Four Year Transfer" and, collectively, the "MAPA Four Year Transfers", and together with the Preferential Transfers and the Two Year Transfers, the "MAPA Transfers") to MAPA totaling **$66,119,836.99**. The Four Year Transfers are set forth in specific detail on **Exhibit C** attached hereto.

50. The first page of **Exhibit C** contains a summary sheet showing total transfers from the Debtors to MAPA (outflows) and transfers from MAPA to the Debtors (inflows). The term MAPA Transfers refers to the transfers from the Debtors to MAPA, described in **Exhibit C** as outflows. The Committee requested from the Debtors and certain insiders the basis for all of the MAPA Transfers and the inflows set forth on **Exhibit C** but did not receive any explanation. Thus, the extent to which any such inflows provide a defense to claims in this Complaint is subject to discovery and proof.

51. The Debtors scheduled certain amounts owed to MAPA which, as of the date of filing this Complaint, bear the following current claim amounts: $0.00, $12,834.53, $0.00, $0.00, $0.00, $0.00, and $0.00 [Schedule Nos. 2663321, 2663364, 2663419, 2663428, 2663486, 2663510, and 2663555] (the "MAPA Claims").

52. The Trust reserves the right to amend this Complaint to include information including the following: (i) further information regarding the MAPA Transfers, including additional MAPA Transfers, made to MAPA, (ii) modifications of MAPA's legal name, (iii) additional defendants liable for the MAPA Transfers, and (iv) additional causes of action (*e.g.*,

but not exclusively, sections 542, 544, 545, and 548 of the Bankruptcy Code, and/or related state-law causes of action), that may become known to the Trust at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to this Complaint.

53. Notwithstanding any potential defenses to the MAPA Transfers that are known or knowable by the Trust based on its due diligence to date, pursuant to section 547(g) of the Bankruptcy Code MAPA bears the burden of proving the nonavoidability of any MAPA Transfer. However, prior to filing this Complaint, the Trust conducted due diligence into MAPA's potential defenses to the MAPA Transfers, which included reviewing the Debtors' available books and records.

d. Maplewood Operating, LLC

54. Maplewood is a statutory insider of the Debtors pursuant to 11 U.S.C. § 101(31) because it is an affiliate of the Debtors. The Debtors and Maplewood also share common officers, directors, and managers who simultaneously held formal management and control positions at both entities at the time of the Transfers. Consequently, Maplewood is a statutory insider because it is managed and controlled by individuals who are themselves statutory insiders of the Debtors.

55. Upon information and belief, Maplewood and the Debtors did not do business at arm's length. The Debtors regularly issued payments to Maplewood for goods and/or services at grossly inflated, above-market rates. The Trust is unaware of any formal, written, or arm's-length negotiated contracts governing these arrangements. Instead, the interlocking insiders utilized their dual control to unilaterally siphon cash from the Debtors to Maplewood to the detriment of the Debtors' estates and legitimate creditors.

56. Upon information and belief, prior to the Petition Date and during the Preference Period, the Debtors and Maplewood engaged in transactions in which Maplewood provided

services and/or goods to one or more of the Debtors, and received payment from the Debtors while the Debtors were insolvent.

57. Specifically, the Trust—based on information from the Debtors' books and records—has determined that:

a. During the Preference Period one or more of the Debtors transferred monies to Maplewood totaling **$1,290,114.52** (each a "Maplewood Preferential Transfer" and, collectively, the "Maplewood Preferential Transfers"). The Transfers are set forth in specific detail on **Exhibit D** attached hereto.

b. During the two years preceding the Petition Date, the Debtors made certain transfers (each a "Maplewood Two Year Transfer" and, collectively, the "Maplewood Two Year Transfers") to Maplewood totaling **$1,508,693.46**. The Two Year Transfers are set forth in specific detail on **Exhibit D** attached hereto.

c. During the four years preceding the Petition Date, the Debtors made certain transfers (each a "Maplewood Four Year Transfer" and, collectively, the "Maplewood Four Year Transfers", and together with the Preferential Transfers and the Two Year Transfers, the "Maplewood Transfers") to Maplewood totaling **$1,508,693.46**. The Four Year Transfers are set forth in specific detail on **Exhibit D** attached hereto.

58. The first page of **Exhibit D** contains a summary sheet showing total transfers from the Debtors to Maplewood (outflows) and transfers from Maplewood to the Debtors (inflows). The term Maplewood Transfers refers to the transfers from the Debtors to Maplewood, described in **Exhibit D** as outflows. The Committee requested from the Debtors and certain insiders the basis for all of the Maplewood Transfers and the inflows set forth on **Exhibit D** but did not receive any explanation. Thus, the extent to which any such inflows provide a defense to claims in this Complaint is subject to discovery and proof.

59. The Trust reserves the right to amend this Complaint to include information including the following: (i) further information regarding the Maplewood Transfers, including additional Maplewood Transfers, made to Maplewood, (ii) modifications of Maplewood's legal name, (iii) additional defendants liable for the Maplewood Transfers, and (iv) additional causes of

action (*e.g.*, but not exclusively, sections 542, 544, 545, and 548 of the Bankruptcy Code, and/or related state-law causes of action), that may become known to the Trust at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to this Complaint.

60. Notwithstanding any potential defenses to the Maplewood Transfers that are known or knowable by the Trust based on its due diligence to date, pursuant to section 547(g) of the Bankruptcy Code Maplewood bears the burden of proving the nonavoidability of any Maplewood Transfer. However, prior to filing this Complaint, the Trust conducted due diligence into Maplewood's potential defenses to the Maplewood Transfers, which included reviewing the Debtors' available books and records.

e. Milton Operating, LLC

61. Milton is a statutory insider of the Debtors pursuant to 11 U.S.C. § 101(31) because it is an affiliate of the Debtors. The Debtors and Milton also share common officers, directors, and managers who simultaneously held formal management and control positions at both entities at the time of the Transfers. Consequently, Milton is a statutory insider because it is managed and controlled by individuals who are themselves statutory insiders of the Debtors.

62. Upon information and belief, Milton and the Debtors did not do business at arm's length. The Debtors regularly issued payments to Milton for goods and/or services at grossly inflated, above-market rates. The Trust is unaware of any formal, written, or arm's-length negotiated contracts governing these arrangements. Instead, the interlocking insiders utilized their dual control to unilaterally siphon cash from the Debtors to Milton to the detriment of the Debtors' estates and legitimate creditors.

63. Upon information and belief, prior to the Petition Date and during the Preference Period, the Debtors and Milton engaged in transactions in which Milton provided services and/or

goods to one or more of the Debtors, and received payment from the Debtors while the Debtors were insolvent.

64. Specifically, the Trust—based on information from the Debtors' books and records—has determined that:

a. During the Preference Period one or more of the Debtors transferred monies to Milton totaling **$1,538,105.73** (each a "Milton Preferential Transfer" and, collectively, the "Milton Preferential Transfers"). The Transfers are set forth in specific detail on **Exhibit E** attached hereto.

b. During the two years preceding the Petition Date, the Debtors made certain transfers (each a "Milton Two Year Transfer" and, collectively, the "Milton Two Year Transfers") to Milton totaling **$5,869,144.71**. The Two Year Transfers are set forth in specific detail on **Exhibit E** attached hereto.

c. During the four years preceding the Petition Date, the Debtors made certain transfers (each a "Milton Four Year Transfer" and, collectively, the "Milton Four Year Transfers", and together with the Preferential Transfers and the Two Year Transfers, the "Milton Transfers") to Milton totaling **$5,869,144.71**. The Four Year Transfers are set forth in specific detail on **Exhibit E** attached hereto.

65. The first page of **Exhibit E** contains a summary sheet showing total transfers from the Debtors to Milton (outflows) and transfers from Milton to the Debtors (inflows). The term Milton Transfers refers to the transfers from the Debtors to Milton, described in **Exhibit E** as outflows. The Committee requested from the Debtors and certain insiders the basis for all of the Milton Transfers and the inflows set forth on **Exhibit E** but did not receive any explanation. Thus, the extent to which any such inflows provide a defense to claims in this Complaint is subject to discovery and proof.

66. The Debtors scheduled certain amounts owed to Milton which, as of the date of filing this Complaint, bear the following current claim amounts: $0.00, $0.00, $0.00, $0.00, $0.00, $0.00, and $0.00 [Schedule Nos. 2663358, 2663398, 2663470, 2663536, 2663562, 2663606, and 2663621] (the "Milton Claims").

67. The Trust reserves the right to amend this Complaint to include information including the following: (i) further information regarding the Milton Transfers, including additional Milton Transfers, made to Milton, (ii) modifications of Milton's legal name, (iii) additional defendants liable for the Milton Transfers, and (iv) additional causes of action (*e.g.*, but not exclusively, sections 542, 544, 545, and 548 of the Bankruptcy Code, and/or related state-law causes of action), that may become known to the Trust at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to this Complaint.

68. Notwithstanding any potential defenses to the Milton Transfers that are known or knowable by the Trust based on its due diligence to date, pursuant to section 547(g) of the Bankruptcy Code Milton bears the burden of proving the nonavoidability of any Milton Transfer. However, prior to filing this Complaint, the Trust conducted due diligence into Milton's potential defenses to the Milton Transfers, which included reviewing the Debtors' available books and records.

f. Parkhouse Operating, LLC

69. Parkhouse is a statutory insider of the Debtors pursuant to 11 U.S.C. § 101(31) because it is an affiliate of the Debtors. The Debtors and Parkhouse also share common officers, directors, and managers who simultaneously held formal management and control positions at both entities at the time of the Transfers. Consequently, Parkhouse is a statutory insider because it is managed and controlled by individuals who are themselves statutory insiders of the Debtors.

70. Upon information and belief, Parkhouse and the Debtors did not do business at arm's length. The Debtors regularly issued payments to Parkhouse for goods and/or services at grossly inflated, above-market rates. The Trust is unaware of any formal, written, or arm's-length negotiated contracts governing these arrangements. Instead, the interlocking insiders utilized their

dual control to unilaterally siphon cash from the Debtors to Parkhouse to the detriment of the Debtors' estates and legitimate creditors.

71. Upon information and belief, prior to the Petition Date and during the Preference Period, the Debtors and Parkhouse engaged in transactions in which Parkhouse provided services and/or goods to one or more of the Debtors, and received payment from the Debtors while the Debtors were insolvent.

72. Specifically, the Trust—based on information from the Debtors' books and records—has determined that:

a. During the Preference Period one or more of the Debtors transferred monies to Parkhouse totaling **$4,037,768.99** (each a "Parkhouse Preferential Transfer" and, collectively, the "Parkhouse Preferential Transfers"). The Transfers are set forth in specific detail on **Exhibit F** attached hereto.

b. During the two years preceding the Petition Date, the Debtors made certain transfers (each a "Parkhouse Two Year Transfer" and, collectively, the "Parkhouse Two Year Transfers") to Parkhouse totaling **$19,803,933.37**. The Two Year Transfers are set forth in specific detail on **Exhibit F** attached hereto.

c. During the four years preceding the Petition Date, the Debtors made certain transfers (each a "Parkhouse Four Year Transfer" and, collectively, the "Parkhouse Four Year Transfers", and together with the Preferential Transfers and the Two Year Transfers, the "Parkhouse Transfers") to Parkhouse totaling **$20,036,122.64**. The Four Year Transfers are set forth in specific detail on **Exhibit F** attached hereto.

73. The first page of **Exhibit F** contains a summary sheet showing total transfers from the Debtors to Parkhouse (outflows) and transfers from Parkhouse to the Debtors (inflows). The term Parkhouse Transfers refers to the transfers from the Debtors to Parkhouse, described in **Exhibit F** as outflows. The Committee requested from the Debtors and certain insiders the basis for all of the Parkhouse Transfers and the inflows set forth on **Exhibit F** but did not receive any explanation. Thus, the extent to which any such inflows provide a defense to claims in this Complaint is subject to discovery and proof.

74. The Debtors scheduled certain amounts owed to Parkhouse which, as of the date of filing this Complaint, bear the following current claim amounts: $0.00, $0.00, $0.00, $0.00, $0.00, and $0.00 [Schedule Nos. 2663409, 2663526, 2663546, 2663608, 2663643, and 2663684] (the "Parkhouse Claims").

75. The Trust reserves the right to amend this Complaint to include information including the following: (i) further information regarding the Parkhouse Transfers, including additional Parkhouse Transfers, made to Parkhouse, (ii) modifications of Parkhouse's legal name, (iii) additional defendants liable for the Parkhouse Transfers, and (iv) additional causes of action (*e.g.*, but not exclusively, sections 542, 544, 545, and 548 of the Bankruptcy Code, and/or related state-law causes of action), that may become known to the Trust at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to this Complaint.

76. Notwithstanding any potential defenses to the Parkhouse Transfers that are known or knowable by the Trust based on its due diligence to date, pursuant to section 547(g) of the Bankruptcy Code Parkhouse bears the burden of proving the nonavoidability of any Parkhouse Transfer. However, prior to filing this Complaint, the Trust conducted due diligence into Parkhouse's potential defenses to the Parkhouse Transfers, which included reviewing the Debtors' available books and records.

g. Tucker Operating, LLC

77. Tucker is a statutory insider of the Debtors pursuant to 11 U.S.C. § 101(31) because it is an affiliate of the Debtors. The Debtors and Tucker also share common officers, directors, and managers who simultaneously held formal management and control positions at both entities at the time of the Transfers. Consequently, Tucker is a statutory insider because it is managed and controlled by individuals who are themselves statutory insiders of the Debtors.

78. Upon information and belief, Tucker and the Debtors did not do business at arm's length. The Debtors regularly issued payments to Tucker for goods and/or services at grossly inflated, above-market rates. The Trust is unaware of any formal, written, or arm's-length negotiated contracts governing these arrangements. Instead, the interlocking insiders utilized their dual control to unilaterally siphon cash from the Debtors to Tucker to the detriment of the Debtors' estates and legitimate creditors.

79. Upon information and belief, prior to the Petition Date and during the Preference Period, the Debtors and Tucker engaged in transactions in which Tucker provided services and/or goods to one or more of the Debtors, and received payment from the Debtors while the Debtors were insolvent.

80. Specifically, the Trust—based on information from the Debtors' books and records—has determined that:

a. During the Preference Period one or more of the Debtors transferred monies to Tucker totaling **$0.00** (each a "Tucker Preferential Transfer" and, collectively, the "Tucker Preferential Transfers"). The Transfers are set forth in specific detail on **Exhibit G** attached hereto.

b. During the two years preceding the Petition Date, the Debtors made certain transfers (each a "Tucker Two Year Transfer" and, collectively, the "Tucker Two Year Transfers") to Tucker totaling **$73,401.68**. The Two Year Transfers are set forth in specific detail on **Exhibit G** attached hereto.

c. During the four years preceding the Petition Date, the Debtors made certain transfers (each a "Tucker Four Year Transfer" and, collectively, the "Tucker Four Year Transfers", and together with the Preferential Transfers and the Two Year Transfers, the "Tucker Transfers") to Tucker totaling **$73,401.68**. The Four Year Transfers are set forth in specific detail on **Exhibit G** attached hereto.

81. The first page of **Exhibit G** contains a summary sheet showing total transfers from the Debtors to Tucker (outflows) and transfers from Tucker to the Debtors (inflows). The term Tucker Transfers refers to the transfers from the Debtors to Tucker, described in **Exhibit G** as outflows. The Committee requested from the Debtors and certain insiders the basis for all of the

Tucker Transfers and the inflows set forth on **Exhibit G** but did not receive any explanation. Thus, the extent to which any such inflows provide a defense to claims in this Complaint is subject to discovery and proof.

82. The Debtors scheduled certain amounts owed to Tucker which, as of the date of filing this Complaint, bear the following current claim amounts: $0.00, $0.00, $0.00, $0.00, and $0.00 [Schedule Nos. 2663736, 2663806, 2663842, 2663932, 2663974] (the "Tucker Claims").

83. The Trust reserves the right to amend this Complaint to include information including the following: (i) further information regarding the Tucker Transfers, including additional Tucker Transfers, made to Tucker, (ii) modifications of Tucker's legal name, (iii) additional defendants liable for the Tucker Transfers, and (iv) additional causes of action (*e.g.*, but not exclusively, sections 542, 544, 545, and 548 of the Bankruptcy Code, and/or related state-law causes of action), that may become known to the Trust at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to this Complaint.

84. Notwithstanding any potential defenses to the Tucker Transfers that are known or knowable by the Trust based on its due diligence to date, pursuant to section 547(g) of the Bankruptcy Code Tucker bears the burden of proving the nonavoidability of any Tucker Transfer. However, prior to filing this Complaint, the Trust conducted due diligence into Tucker's potential defenses to the Tucker Transfers, which included reviewing the Debtors' available books and records.

h. Watsontown Operating LLC

85. Watsontown is a statutory insider of the Debtors pursuant to 11 U.S.C. § 101(31) because it is an affiliate of the Debtors. The Debtors and Watsontown also share common officers, directors, and managers who simultaneously held formal management and control positions at both

entities at the time of the Transfers. Consequently, Watsontown is a statutory insider because it is managed and controlled by individuals who are themselves statutory insiders of the Debtors.

86. Upon information and belief, Watsontown and the Debtors did not do business at arm’s length. The Debtors regularly issued payments to Watsontown for goods and/or services at grossly inflated, above-market rates. The Trust is unaware of any formal, written, or arm’s-length negotiated contracts governing these arrangements. Instead, the interlocking insiders utilized their dual control to unilaterally siphon cash from the Debtors to Watsontown to the detriment of the Debtors' estates and legitimate creditors.

87. Upon information and belief, prior to the Petition Date and during the Preference Period, the Debtors and Watsontown engaged in transactions in which Watsontown provided services and/or goods to one or more of the Debtors, and received payment from the Debtors while the Debtors were insolvent.

88. Specifically, the Trust—based on information from the Debtors’ books and records—has determined that:

a. During the Preference Period one or more of the Debtors transferred monies to Watsontown totaling **$1,327,615.68** (each a “Watsontown Preferential Transfer” and, collectively, the “Watsontown Preferential Transfers”). The Transfers are set forth in specific detail on **Exhibit H** attached hereto.

b. During the two years preceding the Petition Date, the Debtors made certain transfers (each a “Watsontown Two Year Transfer” and, collectively, the “Watsontown Two Year Transfers”) to Watsontown totaling **$4,912,083.74**. The Two Year Transfers are set forth in specific detail on **Exhibit H** attached hereto.

c. During the four years preceding the Petition Date, the Debtors made certain transfers (each a “Watsontown Four Year Transfer” and, collectively, the “Watsontown Four Year Transfers”, and together with the Preferential Transfers and the Two Year Transfers, the “Watsontown Transfers”) to Watsontown totaling **$5,027,083.74**. The Four Year Transfers are set forth in specific detail on **Exhibit H** attached hereto.

89. The first page of **<u>Exhibit H</u>** contains a summary sheet showing total transfers from the Debtors to Watsontown (outflows) and transfers from Watsontown to the Debtors (inflows). The term Watsontown Transfers refers to the transfers from the Debtors to Watsontown, described in **<u>Exhibit H</u>** as outflows. The Committee requested from the Debtors and certain insiders the basis for all of the Watsontown Transfers and the inflows set forth on **<u>Exhibit H</u>** but did not receive any explanation. Thus, the extent to which any such inflows provide a defense to claims in this Complaint is subject to discovery and proof.

90. The Trust reserves the right to amend this Complaint to include information including the following: (i) further information regarding the Watsontown Transfers, including additional Watsontown Transfers, made to Watsontown, (ii) modifications of Watsontown's legal name, (iii) additional defendants liable for the Watsontown Transfers, and (iv) additional causes of action (*e.g.*, but not exclusively, sections 542, 544, 545, and 548 of the Bankruptcy Code, and/or related state-law causes of action), that may become known to the Trust at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to this Complaint.

91. Notwithstanding any potential defenses to the Watsontown Transfers that are known or knowable by the Trust based on its due diligence to date, pursuant to section 547(g) of the Bankruptcy Code Watsontown bears the burden of proving the nonavoidability of any Watsontown Transfer. However, prior to filing this Complaint, the Trust conducted due diligence into Watsontown's potential defenses to the Watsontown Transfers, which included reviewing the Debtors' available books and records.

i. <u>York Operating, LLC</u>

92. York is a statutory insider of the Debtors pursuant to 11 U.S.C. § 101(31) because it is an affiliate of the Debtors. The Debtors and York also share common officers, directors, and

managers who simultaneously held formal management and control positions at both entities at the time of the Transfers. Consequently, York is a statutory insider because it is managed and controlled by individuals who are themselves statutory insiders of the Debtors.

93. Upon information and belief, York and the Debtors did not do business at arm’s length. The Debtors regularly issued payments to York for goods and/or services at grossly inflated, above-market rates. The Trust is unaware of any formal, written, or arm’s-length negotiated contracts governing these arrangements. Instead, the interlocking insiders utilized their dual control to unilaterally siphon cash from the Debtors to York to the detriment of the Debtors' estates and legitimate creditors.

94. Upon information and belief, prior to the Petition Date and during the Preference Period, the Debtors and York engaged in transactions in which York provided services and/or goods to one or more of the Debtors, and received payment from the Debtors while the Debtors were insolvent.

95. Specifically, the Trust—based on information from the Debtors’ books and records—has determined that:

a. During the Preference Period one or more of the Debtors transferred monies to York totaling **$12.00** (each a “York Preferential Transfer” and, collectively, the “York Preferential Transfers”). The Transfers are set forth in specific detail on **Exhibit I** attached hereto.

b. During the two years preceding the Petition Date, the Debtors made certain transfers (each a “York Two Year Transfer” and, collectively, the “York Two Year Transfers”) to York totaling **$1,000,938.98**. The Two Year Transfers are set forth in specific detail on **Exhibit I** attached hereto.

c. During the four years preceding the Petition Date, the Debtors made certain transfers (each a “York Four Year Transfer” and, collectively, the “York Four Year Transfers”, and together with the Preferential Transfers and the Two Year Transfers, the “York Transfers”) to York totaling **$1,026,622.30**. The Four Year Transfers are set forth in specific detail on **Exhibit I** attached hereto.

96. The first page of **Exhibit I** contains a summary sheet showing total transfers from the Debtors to York (outflows) and transfers from York to the Debtors (inflows). The term York Transfers refers to the transfers from the Debtors to York, described in **Exhibit I** as outflows. The Committee requested from the Debtors and certain insiders the basis for all of the York Transfers and the inflows set forth on **Exhibit I** but did not receive any explanation. Thus, the extent to which any such inflows provide a defense to claims in this Complaint is subject to discovery and proof.

97. The Debtors also scheduled certain amounts owed to York which, as of the date of filing this Complaint, bear the following current claim amounts: $0.00 and $0.00 [Schedule Nos. 2663846 and 2663993] (the "York Claims").

98. The Trust reserves the right to amend this Complaint to include information including the following: (i) further information regarding the York Transfers, including additional York Transfers, made to York, (ii) modifications of York's legal name, (iii) additional defendants liable for the York Transfers, and (iv) additional causes of action (*e.g.*, but not exclusively, sections 542, 544, 545, and 548 of the Bankruptcy Code, and/or related state-law causes of action), that may become known to the Trust at any time during this adversary proceeding, through formal discovery or otherwise, and for such amendments to relate back to this Complaint.

99. Notwithstanding any potential defenses to the York Transfers that are known or knowable by the Trust based on its due diligence to date, pursuant to section 547(g) of the Bankruptcy Code York bears the burden of proving the nonavoidability of any York Transfer. However, prior to filing this Complaint, the Trust conducted due diligence into York's potential defenses to the York Transfers, which included reviewing the Debtors' available books and records.

## CARE PAVILION OPERATING LLC

## CARE PAVILION - FIRST CLAIM FOR RELIEF
**(Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547, 550 and 551)**

100. Each Care Pavilion Transfer identified on **Exhibit A** was made to Care Pavilion by one or more of the Debtors.

101. Each Care Pavilion Transfer constituted a transfer of property of one or more of the Debtors to or for the benefit of Care Pavilion.

102. Care Pavilion was a creditor of one or more of the Debtors at the time of each Care Pavilion Transfer.

103. Each Care Pavilion Transfer was to or for the benefit of Care Pavilion, as a creditor of one or more of the Debtors.

104. Each Care Pavilion Transfer was made for, or on account of, an antecedent debt or debts owed by one or more of the Debtors to Care Pavilion.

105. Each Care Pavilion Transfer was made while the Debtors were insolvent. The Debtors are entitled to the presumption of insolvency for each Care Pavilion Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

106. Each Care Pavilion Transfer enabled Care Pavilion to receive more than Care Pavilion would have received if: (i) the Chapter 11 Cases were brought as cases under chapter 7 of the Bankruptcy Code; (ii) the Care Pavilion Transfer had not been made; and (iii) Care Pavilion received payment on account of the debt paid by each of the Care Pavilion Transfers to the extent provided by the Bankruptcy Code.

107. Each Care Pavilion Transfer is avoidable in its entirety pursuant to section 547(b) of the Bankruptcy Code.

108. Care Pavilion was either the initial transferee or the entity for whose benefit each Care Pavilion Transfer was made.

109. Pursuant to section 550(a) of the Bankruptcy Code, the Trust is entitled to recover, for the benefit of the Debtors' estates, from Care Pavilion the amount of the Care Pavilion Transfers, plus applicable interest to the date of payment and the costs of this action.

**CARE PAVILION - SECOND CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Actual Fraud)**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

110. The Care Pavilion Two Year Transfers, as set forth on **Exhibit A**, which is incorporated herein by reference, were made on or within two years before the Petition Date.

111. The Care Pavilion Two Year Transfers were made by the Debtors to or for the benefit of the Care Pavilion Two Year Initial Transferee Defendants with the actual intent to hinder or delay, and defraud some or all of Care Pavilion's creditors.

112. The Care Pavilion Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Care Pavilion Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**CARE PAVILION - THIRD CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Constructive Fraud)**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

113. The Care Pavilion Two Year Transfers were made on or within two years before the Petition Date.

114. The Debtors and their estates received less than reasonably equivalent value in exchange for each of the Care Pavilion Two Year Transfers.

115. At the time of each of the Care Pavilion Two Year Transfers, the Debtors were insolvent, or became insolvent as a result of the Care Pavilion Two Year Transfer in question.

116. At the time of each of the Care Pavilion Two Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

117. At the time of each of the Care Pavilion Two Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

118. The Care Pavilion Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Care Pavilion Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**CARE PAVILION - FOURTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers – Actual Fraud)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(1))**

119. At all times relevant to the Care Pavilion Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

120. The Care Pavilion Four Year Transfers were made by the Debtors with the actual intent to hinder or delay, and defraud some or all of the Debtor's creditors. The Debtors made the Care Pavilion Four Year Transfers to or for the benefit of Care Pavilion, as set forth on **Exhibit A**, which is incorporated herein by reference, in furtherance of a fraudulent scheme.

**CARE PAVILION - FIFTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Unreasonably Small Capital)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(2)(i))**

121. At all times relevant to the Care Pavilion Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the

Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

122. The Debtors did not receive fair consideration for the Care Pavilion Four Year Transfers.

123. At the time of each of the Care Pavilion Four Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

**CARE PAVILION - SIXTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Inability to Pay Debts)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA §§ 5104(a)(2)(ii))**

124. At all times relevant to the Care Pavilion Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

125. The Debtors did not receive fair consideration for the Care Pavilion Four Year Transfers.

126. At the time of each of the Care Pavilion Four Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

**CARE PAVILION - SEVENTH CLAIM FOR RELIEF**
**(Claim Disallowance)**
**(11 U.S.C. §§ 502(d), (j))**

127. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

128. Care Pavilion is a transferee of transfers avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

129. Care Pavilion has not paid the amount of the Care Pavilion Transfers, or turned over such property, for which Care Pavilion is liable under section 550 of the Bankruptcy Code.

130. Pursuant to section 502(d) of the Bankruptcy Code, any and all Care Pavilion Claims and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust must be disallowed until such time as Care Pavilion pays to the Trust an amount equal to the aggregate amount of the Care Pavilion Transfers, plus interest thereon and costs.

131. Pursuant to section 502(j) of the Bankruptcy Code, any and all Care Pavilion Claims, and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust previously allowed by the Debtors or by the Trust, must be reconsidered and disallowed until such time as Care Pavilion pays to the Trust an amount equal to the aggregate amount of the Care Pavilion Transfers.

## CLIVEDEN OPERATING, LLC

## CLIVEDEN - FIRST CLAIM FOR RELIEF
**(Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547, 550 and 551)**

132. Each Cliveden Transfer identified on **Exhibit B** was made to Cliveden by one or more of the Debtors.

133. Each Cliveden Transfer constituted a transfer of property of one or more of the Debtors to or for the benefit of Cliveden.

134. Cliveden was a creditor of one or more of the Debtors at the time of each Cliveden Transfer.

135. Each Cliveden Transfer was to or for the benefit of Cliveden, as a creditor of one or more of the Debtors.

136. Each Cliveden Transfer was made for, or on account of, an antecedent debt or debts owed by one or more of the Debtors to Cliveden.

137. Each Cliveden Transfer was made while the Debtors were insolvent. The Debtors are entitled to the presumption of insolvency for each Cliveden Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

138. Each Cliveden Transfer enabled Cliveden to receive more than Cliveden would have received if: (i) the Chapter 11 Cases were brought as cases under chapter 7 of the Bankruptcy Code; (ii) the Cliveden Transfer had not been made; and (iii) Cliveden received payment on account of the debt paid by each of the Cliveden Transfers to the extent provided by the Bankruptcy Code.

139. Each Cliveden Transfer is avoidable in its entirety pursuant to section 547(b) of the Bankruptcy Code.

140. Cliveden was either the initial transferee or the entity for whose benefit each Cliveden Transfer was made.

141. Pursuant to section 550(a) of the Bankruptcy Code, the Trust is entitled to recover, for the benefit of the Debtors' estates, from Cliveden the amount of the Cliveden Transfers, plus applicable interest to the date of payment and the costs of this action.

**CLIVEDEN - SECOND CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Actual Fraud)**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

142. The Cliveden Two Year Transfers, as set forth on **Exhibit B**, which is incorporated herein by reference, were made on or within two years before the Petition Date.

143. The Cliveden Two Year Transfers were made by the Debtors to or for the benefit of the Cliveden Two Year Initial Transferee Defendants with the actual intent to hinder or delay, and defraud some or all of Cliveden's creditors.

144. The Cliveden Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Cliveden Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

## CLIVEDEN - THIRD CLAIM FOR RELIEF
**(Avoidance and Recovery of Two Year Initial Transfers - Constructive Fraud)**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

145. The Cliveden Two Year Transfers were made on or within two years before the Petition Date.

146. The Debtors and their estates received less than reasonably equivalent value in exchange for each of the Cliveden Two Year Transfers.

147. At the time of each of the Cliveden Two Year Transfers, the Debtors were insolvent, or became insolvent as a result of the Cliveden Two Year Transfer in question.

148. At the time of each of the Cliveden Two Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

149. At the time of each of the Cliveden Two Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

150. The Cliveden Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Cliveden Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**<u>CLIVEDEN - FOURTH CLAIM FOR RELIEF</u>**
**(Recovery of Four Year Transfers – Actual Fraud)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(1))**

151. At all times relevant to the Cliveden Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

152. The Cliveden Four Year Transfers were made by the Debtors with the actual intent to hinder or delay, and defraud some or all of the Debtor's creditors. The Debtors made the Cliveden Four Year Transfers to or for the benefit of Cliveden, as set forth on **Exhibit B**, which is incorporated herein by reference, in furtherance of a fraudulent scheme.

**<u>CLIVEDEN - FIFTH CLAIM FOR RELIEF</u>**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Unreasonably Small Capital)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(2)(i))**

153. At all times relevant to the Cliveden Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

154. The Debtors did not receive fair consideration for the Cliveden Four Year Transfers.

155. At the time of each of the Cliveden Four Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

**<u>CLIVEDEN - SIXTH CLAIM FOR RELIEF</u>**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Inability to Pay Debts)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA §§ 5104(a)(2)(ii))**

156. At all times relevant to the Cliveden Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

157. The Debtors did not receive fair consideration for the Cliveden Four Year Transfers.

158. At the time of each of the Cliveden Four Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

**CLIVEDEN - SEVENTH CLAIM FOR RELIEF**
**(Claim Disallowance)**
**(11 U.S.C. §§ 502(d), (j))**

159. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

160. Cliveden is a transferee of transfers avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

161. Cliveden has not paid the amount of the Cliveden Transfers, or turned over such property, for which Cliveden is liable under section 550 of the Bankruptcy Code.

162. Pursuant to section 502(d) of the Bankruptcy Code, any and all Cliveden Claims and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust must be disallowed until such time as Cliveden pays to the Trust an amount equal to the aggregate amount of the Cliveden Transfers, plus interest thereon and costs.

163. Pursuant to section 502(j) of the Bankruptcy Code, any and all Cliveden Claims, and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust previously allowed by the Debtors or by the Trust, must be reconsidered and disallowed until such time as Cliveden pays to the Trust an amount equal to the aggregate amount of the Cliveden Transfers.

## MAPA OPERATING LLC

### MAPA - FIRST CLAIM FOR RELIEF
**(Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547, 550 and 551)**

164. Each MAPA Transfer identified on **Exhibit C** was made to MAPA by one or more of the Debtors.

165. Each MAPA Transfer constituted a transfer of property of one or more of the Debtors to or for the benefit of MAPA.

166. MAPA was a creditor of one or more of the Debtors at the time of each MAPA Transfer.

167. Each MAPA Transfer was to or for the benefit of MAPA, as a creditor of one or more of the Debtors.

168. Each MAPA Transfer was made for, or on account of, an antecedent debt or debts owed by one or more of the Debtors to MAPA.

169. Each MAPA Transfer was made while the Debtors were insolvent. The Debtors are entitled to the presumption of insolvency for each MAPA Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

170. Each MAPA Transfer enabled MAPA to receive more than MAPA would have received if: (i) the Chapter 11 Cases were brought as cases under chapter 7 of the Bankruptcy Code; (ii) the MAPA Transfer had not been made; and (iii) MAPA received payment on account of the debt paid by each of the MAPA Transfers to the extent provided by the Bankruptcy Code.

171. Each MAPA Transfer is avoidable in its entirety pursuant to section 547(b) of the Bankruptcy Code.

172. MAPA was either the initial transferee or the entity for whose benefit each MAPA Transfer was made.

173. Pursuant to section 550(a) of the Bankruptcy Code, the Trust is entitled to recover, for the benefit of the Debtors' estates, from MAPA the amount of the MAPA Transfers, plus applicable interest to the date of payment and the costs of this action.

**MAPA - SECOND CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Actual Fraud)**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

174. The MAPA Two Year Transfers, as set forth on **Exhibit C**, which is incorporated herein by reference, were made on or within two years before the Petition Date.

175. The MAPA Two Year Transfers were made by the Debtors to or for the benefit of the MAPA Two Year Initial Transferee Defendants with the actual intent to hinder or delay, and defraud some or all of MAPA's creditors.

176. The MAPA Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the MAPA Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**MAPA - THIRD CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Constructive Fraud)**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

177. The MAPA Two Year Transfers were made on or within two years before the Petition Date.

178. The Debtors and their estates received less than reasonably equivalent value in exchange for each of the MAPA Two Year Transfers.

179. At the time of each of the MAPA Two Year Transfers, the Debtors were insolvent, or became insolvent as a result of the MAPA Two Year Transfer in question.

180. At the time of each of the MAPA Two Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

181. At the time of each of the MAPA Two Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

182. The MAPA Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the MAPA Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**MAPA - FOURTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers – Actual Fraud)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(1))**

183. At all times relevant to the MAPA Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

184. The MAPA Four Year Transfers were made by the Debtors with the actual intent to hinder or delay, and defraud some or all of the Debtor’s creditors. The Debtors made the MAPA Four Year Transfers to or for the benefit of MAPA, as set forth on **Exhibit C**, which is incorporated herein by reference, in furtherance of a fraudulent scheme.

**MAPA - FIFTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Unreasonably Small Capital)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(2)(i))**

185. At all times relevant to the MAPA Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

186. The Debtors did not receive fair consideration for the MAPA Four Year Transfers.

187. At the time of each of the MAPA Four Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

**MAPA - SIXTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Inability to Pay Debts)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA §§ 5104(a)(2)(ii))**

188. At all times relevant to the MAPA Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

189. The Debtors did not receive fair consideration for the MAPA Four Year Transfers.

190. At the time of each of the MAPA Four Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

**MAPA - SEVENTH CLAIM FOR RELIEF**
**(Claim Disallowance)**
**(11 U.S.C. §§ 502(d), (j))**

191. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

192. MAPA is a transferee of transfers avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

193. MAPA has not paid the amount of the MAPA Transfers, or turned over such property, for which MAPA is liable under section 550 of the Bankruptcy Code.

194. Pursuant to section 502(d) of the Bankruptcy Code, any and all MAPA Claims and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust must be

disallowed until such time as MAPA pays to the Trust an amount equal to the aggregate amount of the MAPA Transfers, plus interest thereon and costs.

195. Pursuant to section 502(j) of the Bankruptcy Code, any and all MAPA Claims, and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust previously allowed by the Debtors or by the Trust, must be reconsidered and disallowed until such time as MAPA pays to the Trust an amount equal to the aggregate amount of the MAPA Transfers.

## MAPLEWOOD OPERATING, LLC

## MAPLEWOOD - FIRST CLAIM FOR RELIEF
**(Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547, 550 and 551)**

196. Each Maplewood Transfer identified on **Exhibit D** was made to Maplewood by one or more of the Debtors.

197. Each Maplewood Transfer constituted a transfer of property of one or more of the Debtors to or for the benefit of Maplewood.

198. Maplewood was a creditor of one or more of the Debtors at the time of each Maplewood Transfer.

199. Each Maplewood Transfer was to or for the benefit of Maplewood, as a creditor of one or more of the Debtors.

200. Each Maplewood Transfer was made for, or on account of, an antecedent debt or debts owed by one or more of the Debtors to Maplewood.

201. Each Maplewood Transfer was made while the Debtors were insolvent. The Debtors are entitled to the presumption of insolvency for each Maplewood Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

202. Each Maplewood Transfer enabled Maplewood to receive more than Maplewood would have received if: (i) the Chapter 11 Cases were brought as cases under chapter 7 of the

Bankruptcy Code; (ii) the Maplewood Transfer had not been made; and (iii) Maplewood received payment on account of the debt paid by each of the Maplewood Transfers to the extent provided by the Bankruptcy Code.

203. Each Maplewood Transfer is avoidable in its entirety pursuant to section 547(b) of the Bankruptcy Code.

204. Maplewood was either the initial transferee or the entity for whose benefit each Maplewood Transfer was made.

205. Pursuant to section 550(a) of the Bankruptcy Code, the Trust is entitled to recover, for the benefit of the Debtors' estates, from Maplewood the amount of the Maplewood Transfers, plus applicable interest to the date of payment and the costs of this action.

**MAPLEWOOD - SECOND CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Actual Fraud)**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

206. The Maplewood Two Year Transfers, as set forth on **Exhibit D**, which is incorporated herein by reference, were made on or within two years before the Petition Date.

207. The Maplewood Two Year Transfers were made by the Debtors to or for the benefit of the Maplewood Two Year Initial Transferee Defendants with the actual intent to hinder or delay, and defraud some or all of Maplewood's creditors.

208. The Maplewood Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Maplewood Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**MAPLEWOOD - THIRD CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Constructive Fraud)**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

209. The Maplewood Two Year Transfers were made on or within two years before the Petition Date.

210. The Debtors and their estates received less than reasonably equivalent value in exchange for each of the Maplewood Two Year Transfers.

211. At the time of each of the Maplewood Two Year Transfers, the Debtors were insolvent, or became insolvent as a result of the Maplewood Two Year Transfer in question.

212. At the time of each of the Maplewood Two Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

213. At the time of each of the Maplewood Two Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

214. The Maplewood Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Maplewood Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**MAPLEWOOD - FOURTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers – Actual Fraud)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(1))**

215. At all times relevant to the Maplewood Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

216. The Maplewood Four Year Transfers were made by the Debtors with the actual intent to hinder or delay, and defraud some or all of the Debtor's creditors. The Debtors made the Maplewood Four Year Transfers to or for the benefit of Maplewood, as set forth on **Exhibit D**, which is incorporated herein by reference, in furtherance of a fraudulent scheme.

**MAPLEWOOD - FIFTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Unreasonably Small Capital)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(2)(i))**

217. At all times relevant to the Maplewood Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

218. The Debtors did not receive fair consideration for the Maplewood Four Year Transfers.

219. At the time of each of the Maplewood Four Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

**MAPLEWOOD - SIXTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Inability to Pay Debts)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA §§ 5104(a)(2)(ii))**

220. At all times relevant to the Maplewood Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

221. The Debtors did not receive fair consideration for the Maplewood Four Year Transfers.

222. At the time of each of the Maplewood Four Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

**MAPLEWOOD - SEVENTH CLAIM FOR RELIEF**
**(Claim Disallowance)**
**(11 U.S.C. §§ 502(d), (j))**

223. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

224. Maplewood is a transferee of transfers avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

225. Maplewood has not paid the amount of the Maplewood Transfers, or turned over such property, for which Maplewood is liable under section 550 of the Bankruptcy Code.

226. Pursuant to section 502(d) of the Bankruptcy Code, any and all Maplewood Claims and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust must be disallowed until such time as Maplewood pays to the Trust an amount equal to the aggregate amount of the Maplewood Transfers, plus interest thereon and costs.

227. Pursuant to section 502(j) of the Bankruptcy Code, any and all Maplewood Claims, and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust previously allowed by the Debtors or by the Trust, must be reconsidered and disallowed until such time as Maplewood pays to the Trust an amount equal to the aggregate amount of the Maplewood Transfers.

## MILTON OPERATING, LLC

## MILTON - FIRST CLAIM FOR RELIEF
**(Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547, 550 and 551)**

228. Each Milton Transfer identified on **Exhibit E** was made to Milton by one or more of the Debtors.

229. Each Milton Transfer constituted a transfer of property of one or more of the Debtors to or for the benefit of Milton.

230. Milton was a creditor of one or more of the Debtors at the time of each Milton Transfer.

231. Each Milton Transfer was to or for the benefit of Milton, as a creditor of one or more of the Debtors.

232. Each Milton Transfer was made for, or on account of, an antecedent debt or debts owed by one or more of the Debtors to Milton.

233. Each Milton Transfer was made while the Debtors were insolvent. The Debtors are entitled to the presumption of insolvency for each Milton Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

234. Each Milton Transfer enabled Milton to receive more than Milton would have received if: (i) the Chapter 11 Cases were brought as cases under chapter 7 of the Bankruptcy Code; (ii) the Milton Transfer had not been made; and (iii) Milton received payment on account of the debt paid by each of the Milton Transfers to the extent provided by the Bankruptcy Code.

235. Each Milton Transfer is avoidable in its entirety pursuant to section 547(b) of the Bankruptcy Code.

236. Milton was either the initial transferee or the entity for whose benefit each Milton Transfer was made.

237. Pursuant to section 550(a) of the Bankruptcy Code, the Trust is entitled to recover, for the benefit of the Debtors' estates, from Milton the amount of the Milton Transfers, plus applicable interest to the date of payment and the costs of this action.

**MILTON - SECOND CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Actual Fraud)**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

238. The Milton Two Year Transfers, as set forth on **Exhibit E**, which is incorporated herein by reference, were made on or within two years before the Petition Date.

239. The Milton Two Year Transfers were made by the Debtors to or for the benefit of the Milton Two Year Initial Transferee Defendants with the actual intent to hinder or delay, and defraud some or all of Milton's creditors.

240. The Milton Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Milton Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**MILTON - THIRD CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Constructive Fraud)**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

241. The Milton Two Year Transfers were made on or within two years before the Petition Date.

242. The Debtors and their estates received less than reasonably equivalent value in exchange for each of the Milton Two Year Transfers.

243. At the time of each of the Milton Two Year Transfers, the Debtors were insolvent, or became insolvent as a result of the Milton Two Year Transfer in question.

244. At the time of each of the Milton Two Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

245. At the time of each of the Milton Two Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

246. The Milton Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Milton Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**MILTON - FOURTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers – Actual Fraud)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(1))**

247. At all times relevant to the Milton Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

248. The Milton Four Year Transfers were made by the Debtors with the actual intent to hinder or delay, and defraud some or all of the Debtor's creditors. The Debtors made the Milton Four Year Transfers to or for the benefit of Milton, as set forth on **Exhibit E**, which is incorporated herein by reference, in furtherance of a fraudulent scheme.

**MILTON - FIFTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Unreasonably Small Capital)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(2)(i))**

249. At all times relevant to the Milton Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

250. The Debtors did not receive fair consideration for the Milton Four Year Transfers.

251. At the time of each of the Milton Four Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

**MILTON - SIXTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Inability to Pay Debts)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA §§ 5104(a)(2)(ii))**

252. At all times relevant to the Milton Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

253. The Debtors did not receive fair consideration for the Milton Four Year Transfers.

254. At the time of each of the Milton Four Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

**MILTON - SEVENTH CLAIM FOR RELIEF**
**(Claim Disallowance)**
**(11 U.S.C. §§ 502(d), (j))**

255. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

256. Milton is a transferee of transfers avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

257. Milton has not paid the amount of the Milton Transfers, or turned over such property, for which Milton is liable under section 550 of the Bankruptcy Code.

258. Pursuant to section 502(d) of the Bankruptcy Code, any and all Milton Claims and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust must be

disallowed until such time as Milton pays to the Trust an amount equal to the aggregate amount of the Milton Transfers, plus interest thereon and costs.

259. Pursuant to section 502(j) of the Bankruptcy Code, any and all Milton Claims, and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust previously allowed by the Debtors or by the Trust, must be reconsidered and disallowed until such time as Milton pays to the Trust an amount equal to the aggregate amount of the Milton Transfers.

## PARKHOUSE OPERATING, LLC

### PARKHOUSE - FIRST CLAIM FOR RELIEF
### (Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547, 550 and 551)

260. Each Parkhouse Transfer identified on **Exhibit F** was made to Parkhouse by one or more of the Debtors.

261. Each Parkhouse Transfer constituted a transfer of property of one or more of the Debtors to or for the benefit of Parkhouse.

262. Parkhouse was a creditor of one or more of the Debtors at the time of each Parkhouse Transfer.

263. Each Parkhouse Transfer was to or for the benefit of Parkhouse, as a creditor of one or more of the Debtors.

264. Each Parkhouse Transfer was made for, or on account of, an antecedent debt or debts owed by one or more of the Debtors to Parkhouse.

265. Each Parkhouse Transfer was made while the Debtors were insolvent. The Debtors are entitled to the presumption of insolvency for each Parkhouse Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

266. Each Parkhouse Transfer enabled Parkhouse to receive more than Parkhouse would have received if: (i) the Chapter 11 Cases were brought as cases under chapter 7 of the Bankruptcy

Code; (ii) the Parkhouse Transfer had not been made; and (iii) Parkhouse received payment on account of the debt paid by each of the Parkhouse Transfers to the extent provided by the Bankruptcy Code.

267. Each Parkhouse Transfer is avoidable in its entirety pursuant to section 547(b) of the Bankruptcy Code.

268. Parkhouse was either the initial transferee or the entity for whose benefit each Parkhouse Transfer was made.

269. Pursuant to section 550(a) of the Bankruptcy Code, the Trust is entitled to recover, for the benefit of the Debtors' estates, from Parkhouse the amount of the Parkhouse Transfers, plus applicable interest to the date of payment and the costs of this action.

**PARKHOUSE - SECOND CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Actual Fraud)**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

270. The Parkhouse Two Year Transfers, as set forth on **Exhibit F**, which is incorporated herein by reference, were made on or within two years before the Petition Date.

271. The Parkhouse Two Year Transfers were made by the Debtors to or for the benefit of the Parkhouse Two Year Initial Transferee Defendants with the actual intent to hinder or delay, and defraud some or all of Parkhouse's creditors.

272. The Parkhouse Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Parkhouse Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**PARKHOUSE - THIRD CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Constructive Fraud)**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

273. The Parkhouse Two Year Transfers were made on or within two years before the Petition Date.

274. The Debtors and their estates received less than reasonably equivalent value in exchange for each of the Parkhouse Two Year Transfers.

275. At the time of each of the Parkhouse Two Year Transfers, the Debtors were insolvent, or became insolvent as a result of the Parkhouse Two Year Transfer in question.

276. At the time of each of the Parkhouse Two Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

277. At the time of each of the Parkhouse Two Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

278. The Parkhouse Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Parkhouse Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**PARKHOUSE - FOURTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers – Actual Fraud)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(1))**

279. At all times relevant to the Parkhouse Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

280. The Parkhouse Four Year Transfers were made by the Debtors with the actual intent to hinder or delay, and defraud some or all of the Debtor's creditors. The Debtors made the Parkhouse Four Year Transfers to or for the benefit of Parkhouse, as set forth on **Exhibit F**, which is incorporated herein by reference, in furtherance of a fraudulent scheme.

**PARKHOUSE - FIFTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Unreasonably Small Capital)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(2)(i))**

281. At all times relevant to the Parkhouse Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

282. The Debtors did not receive fair consideration for the Parkhouse Four Year Transfers.

283. At the time of each of the Parkhouse Four Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

**PARKHOUSE - SIXTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Inability to Pay Debts)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA §§ 5104(a)(2)(ii))**

284. At all times relevant to the Parkhouse Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

285. The Debtors did not receive fair consideration for the Parkhouse Four Year Transfers.

286. At the time of each of the Parkhouse Four Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

**PARKHOUSE - SEVENTH CLAIM FOR RELIEF**
**(Claim Disallowance)**
**(11 U.S.C. §§ 502(d), (j))**

287. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

288. Parkhouse is a transferee of transfers avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

289. Parkhouse has not paid the amount of the Parkhouse Transfers, or turned over such property, for which Parkhouse is liable under section 550 of the Bankruptcy Code.

290. Pursuant to section 502(d) of the Bankruptcy Code, any and all Parkhouse Claims and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust must be disallowed until such time as Parkhouse pays to the Trust an amount equal to the aggregate amount of the Parkhouse Transfers, plus interest thereon and costs.

291. Pursuant to section 502(j) of the Bankruptcy Code, any and all Parkhouse Claims, and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust previously allowed by the Debtors or by the Trust, must be reconsidered and disallowed until such time as Parkhouse pays to the Trust an amount equal to the aggregate amount of the Parkhouse Transfers.

**TUCKER OPERATING, LLC**

**TUCKER - FIRST CLAIM FOR RELIEF**
**(Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547, 550 and 551)**

292. Each Tucker Transfer identified on **Exhibit G** was made to Tucker by one or more of the Debtors.

293. Each Tucker Transfer constituted a transfer of property of one or more of the Debtors to or for the benefit of Tucker.

294. Tucker was a creditor of one or more of the Debtors at the time of each Tucker Transfer.

295. Each Tucker Transfer was to or for the benefit of Tucker, as a creditor of one or more of the Debtors.

296. Each Tucker Transfer was made for, or on account of, an antecedent debt or debts owed by one or more of the Debtors to Tucker.

297. Each Tucker Transfer was made while the Debtors were insolvent. The Debtors are entitled to the presumption of insolvency for each Tucker Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

298. Each Tucker Transfer enabled Tucker to receive more than Tucker would have received if: (i) the Chapter 11 Cases were brought as cases under chapter 7 of the Bankruptcy Code; (ii) the Tucker Transfer had not been made; and (iii) Tucker received payment on account of the debt paid by each of the Tucker Transfers to the extent provided by the Bankruptcy Code.

299. Each Tucker Transfer is avoidable in its entirety pursuant to section 547(b) of the Bankruptcy Code.

300. Tucker was either the initial transferee or the entity for whose benefit each Tucker Transfer was made.

301. Pursuant to section 550(a) of the Bankruptcy Code, the Trust is entitled to recover, for the benefit of the Debtors' estates, from Tucker the amount of the Tucker Transfers, plus applicable interest to the date of payment and the costs of this action.

**TUCKER - SECOND CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Actual Fraud)**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

302. The Tucker Two Year Transfers, as set forth on **Exhibit G**, which is incorporated herein by reference, were made on or within two years before the Petition Date.

303. The Tucker Two Year Transfers were made by the Debtors to or for the benefit of the Tucker Two Year Initial Transferee Defendants with the actual intent to hinder or delay, and defraud some or all of Tucker's creditors.

304. The Tucker Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Tucker Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**TUCKER - THIRD CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Constructive Fraud)**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

305. The Tucker Two Year Transfers were made on or within two years before the Petition Date.

306. The Debtors and their estates received less than reasonably equivalent value in exchange for each of the Tucker Two Year Transfers.

307. At the time of each of the Tucker Two Year Transfers, the Debtors were insolvent, or became insolvent as a result of the Tucker Two Year Transfer in question.

308. At the time of each of the Tucker Two Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

309. At the time of each of the Tucker Two Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

310. The Tucker Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Tucker Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**TUCKER - FOURTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers – Actual Fraud)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(1))**

311. At all times relevant to the Tucker Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

312. The Tucker Four Year Transfers were made by the Debtors with the actual intent to hinder or delay, and defraud some or all of the Debtor's creditors. The Debtors made the Tucker Four Year Transfers to or for the benefit of Tucker, as set forth on **Exhibit G**, which is incorporated herein by reference, in furtherance of a fraudulent scheme.

**TUCKER - FIFTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Unreasonably Small Capital)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(2)(i))**

313. At all times relevant to the Tucker Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

314. The Debtors did not receive fair consideration for the Tucker Four Year Transfers.

315. At the time of each of the Tucker Four Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

**TUCKER - SIXTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Inability to Pay Debts)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA §§ 5104(a)(2)(ii))**

316. At all times relevant to the Tucker Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

317. The Debtors did not receive fair consideration for the Tucker Four Year Transfers.

318. At the time of each of the Tucker Four Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

## TUCKER - SEVENTH CLAIM FOR RELIEF
**(Claim Disallowance)**
**(11 U.S.C. §§ 502(d), (j))**

319. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

320. Tucker is a transferee of transfers avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

321. Tucker has not paid the amount of the Tucker Transfers, or turned over such property, for which Tucker is liable under section 550 of the Bankruptcy Code.

322. Pursuant to section 502(d) of the Bankruptcy Code, any and all Tucker Claims and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust must be disallowed until such time as Tucker pays to the Trust an amount equal to the aggregate amount of the Tucker Transfers, plus interest thereon and costs.

323. Pursuant to section 502(j) of the Bankruptcy Code, any and all Tucker Claims, and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust previously allowed by the Debtors or by the Trust, must be reconsidered and disallowed until such time as Tucker pays to the Trust an amount equal to the aggregate amount of the Tucker Transfers.

## WATSONTOWN OPERATING LLC

### WATSONTOWN - FIRST CLAIM FOR RELIEF
**(Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547, 550 and 551)**

324. Each Watsontown Transfer identified on **Exhibit H** was made to Watsontown by one or more of the Debtors.

325. Each Watsontown Transfer constituted a transfer of property of one or more of the Debtors to or for the benefit of Watsontown.

326. Watsontown was a creditor of one or more of the Debtors at the time of each Watsontown Transfer.

327. Each Watsontown Transfer was to or for the benefit of Watsontown, as a creditor of one or more of the Debtors.

328. Each Watsontown Transfer was made for, or on account of, an antecedent debt or debts owed by one or more of the Debtors to Watsontown.

329. Each Watsontown Transfer was made while the Debtors were insolvent. The Debtors are entitled to the presumption of insolvency for each Watsontown Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

330. Each Watsontown Transfer enabled Watsontown to receive more than Watsontown would have received if: (i) the Chapter 11 Cases were brought as cases under chapter 7 of the Bankruptcy Code; (ii) the Watsontown Transfer had not been made; and (iii) Watsontown received payment on account of the debt paid by each of the Watsontown Transfers to the extent provided by the Bankruptcy Code.

331. Each Watsontown Transfer is avoidable in its entirety pursuant to section 547(b) of the Bankruptcy Code.

332. Watsontown was either the initial transferee or the entity for whose benefit each Watsontown Transfer was made.

333. Pursuant to section 550(a) of the Bankruptcy Code, the Trust is entitled to recover, for the benefit of the Debtors' estates, from Watsontown the amount of the Watsontown Transfers, plus applicable interest to the date of payment and the costs of this action.

**WATSONTOWN - SECOND CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Actual Fraud)**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

334. The Watsontown Two Year Transfers, as set forth on **Exhibit H**, which is incorporated herein by reference, were made on or within two years before the Petition Date.

335. The Watsontown Two Year Transfers were made by the Debtors to or for the benefit of the Watsontown Two Year Initial Transferee Defendants with the actual intent to hinder or delay, and defraud some or all of Watsontown's creditors.

336. The Watsontown Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Watsontown Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**WATSONTOWN - THIRD CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Constructive Fraud)**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

337. The Watsontown Two Year Transfers were made on or within two years before the Petition Date.

338. The Debtors and their estates received less than reasonably equivalent value in exchange for each of the Watsontown Two Year Transfers.

339. At the time of each of the Watsontown Two Year Transfers, the Debtors were insolvent, or became insolvent as a result of the Watsontown Two Year Transfer in question.

340. At the time of each of the Watsontown Two Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

341. At the time of each of the Watsontown Two Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

342. The Watsontown Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Watsontown Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**WATSONTOWN - FOURTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers – Actual Fraud)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(1))**

343. At all times relevant to the Watsontown Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

344. The Watsontown Four Year Transfers were made by the Debtors with the actual intent to hinder or delay, and defraud some or all of the Debtor’s creditors. The Debtors made the Watsontown Four Year Transfers to or for the benefit of Watsontown, as set forth on **Exhibit H**, which is incorporated herein by reference, in furtherance of a fraudulent scheme.

**WATSONTOWN - FIFTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Unreasonably Small Capital)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(2)(i))**

345. At all times relevant to the Watsontown Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

346. The Debtors did not receive fair consideration for the Watsontown Four Year Transfers.

347. At the time of each of the Watsontown Four Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

**WATSONTOWN - SIXTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Inability to Pay Debts)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA §§ 5104(a)(2)(ii))**

348. At all times relevant to the Watsontown Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

349. The Debtors did not receive fair consideration for the Watsontown Four Year Transfers.

350. At the time of each of the Watsontown Four Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

**WATSONTOWN - SEVENTH CLAIM FOR RELIEF**
**(Claim Disallowance)**
**(11 U.S.C. §§ 502(d), (j))**

351. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

352. Watsontown is a transferee of transfers avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

353. Watsontown has not paid the amount of the Watsontown Transfers, or turned over such property, for which Watsontown is liable under section 550 of the Bankruptcy Code.

354. Pursuant to section 502(d) of the Bankruptcy Code, any and all Watsontown Claims and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust must be disallowed until such time as Watsontown pays to the Trust an amount equal to the aggregate amount of the Watsontown Transfers, plus interest thereon and costs.

355. Pursuant to section 502(j) of the Bankruptcy Code, any and all Watsontown Claims, and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust previously allowed by the Debtors or by the Trust, must be reconsidered and disallowed until such time as Watsontown pays to the Trust an amount equal to the aggregate amount of the Watsontown Transfers.

**YORK OPERATING LLC**

**YORK - FIRST CLAIM FOR RELIEF**
**(Avoidance and Recovery of Preferential Transfers – 11 U.S.C. §§ 547, 550 and 551)**

356. Each York Transfer identified on **Exhibit I** was made to York by one or more of the Debtors.

357. Each York Transfer constituted a transfer of property of one or more of the Debtors to or for the benefit of York.

358. York was a creditor of one or more of the Debtors at the time of each York Transfer.

359. Each York Transfer was to or for the benefit of York, as a creditor of one or more of the Debtors.

360. Each York Transfer was made for, or on account of, an antecedent debt or debts owed by one or more of the Debtors to York.

361. Each York Transfer was made while the Debtors were insolvent. The Debtors are entitled to the presumption of insolvency for each York Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

362. Each York Transfer enabled York to receive more than York would have received if: (i) the Chapter 11 Cases were brought as cases under chapter 7 of the Bankruptcy Code; (ii) the York Transfer had not been made; and (iii) York received payment on account of the debt paid by each of the York Transfers to the extent provided by the Bankruptcy Code.

363. Each York Transfer is avoidable in its entirety pursuant to section 547(b) of the Bankruptcy Code.

364. York was either the initial transferee or the entity for whose benefit each York Transfer was made.

365. Pursuant to section 550(a) of the Bankruptcy Code, the Trust is entitled to recover, for the benefit of the Debtors' estates, from York the amount of the York Transfers, plus applicable interest to the date of payment and the costs of this action.

**YORK - SECOND CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Actual Fraud)**
**(11 U.S.C. §§ 548(a)(1)(A), 550, and 551)**

366. The York Two Year Transfers, as set forth on **Exhibit I**, which is incorporated herein by reference, were made on or within two years before the Petition Date.

367. The York Two Year Transfers were made by the Debtors to or for the benefit of the York Two Year Initial Transferee Defendants with the actual intent to hinder or delay, and defraud some or all of York's creditors.

368. The York Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the York Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**YORK - THIRD CLAIM FOR RELIEF**
**(Avoidance and Recovery of Two Year Initial Transfers - Constructive Fraud)**
**(11 U.S.C. §§ 548(a)(1)(B), 550, and 551)**

369. The York Two Year Transfers were made on or within two years before the Petition Date.

370. The Debtors and their estates received less than reasonably equivalent value in exchange for each of the York Two Year Transfers.

371. At the time of each of the York Two Year Transfers, the Debtors were insolvent, or became insolvent as a result of the York Two Year Transfer in question.

372. At the time of each of the York Two Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

373. At the time of each of the York Two Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

374. The York Two Year Transfers constitute fraudulent transfers avoidable by the Trust pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the York Two Year Initial Transferee Defendants pursuant to section 550 of the Bankruptcy Code.

**<u>YORK - FOURTH CLAIM FOR RELIEF</u>**
**(Recovery of Four Year Transfers – Actual Fraud)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(1))**

375. At all times relevant to the York Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

376. The York Four Year Transfers were made by the Debtors with the actual intent to hinder or delay, and defraud some or all of the Debtor's creditors. The Debtors made the York Four Year Transfers to or for the benefit of York, as set forth on **Exhibit I**, which is incorporated herein by reference, in furtherance of a fraudulent scheme.

**<u>YORK - FIFTH CLAIM FOR RELIEF</u>**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Unreasonably Small Capital)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA § 5104(a)(2)(i))**

377. At all times relevant to the York Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

378. The Debtors did not receive fair consideration for the York Four Year Transfers.

379. At the time of each of the York Four Year Transfers, the Debtors were engaged in business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Debtors was unreasonably small capital.

**YORK - SIXTH CLAIM FOR RELIEF**
**(Recovery of Four Year Transfers**
**Constructive Fraud, Inability to Pay Debts)**
**(11 U.S.C. §§ 544, 550, and 551 and PUVTA §§ 5104(a)(2)(ii))**

380. At all times relevant to the York Four Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

381. The Debtors did not receive fair consideration for the York Four Year Transfers.

382. At the time of each of the York Four Year Transfers, each Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay such debts as they matured.

**YORK - SEVENTH CLAIM FOR RELIEF**
**(Claim Disallowance)**
**(11 U.S.C. §§ 502(d), (j))**

383. The Trust realleges and restates all the foregoing paragraphs as if fully set forth herein.

384. York is a transferee of transfers avoidable under sections 544, 547, and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

385. York has not paid the amount of the York Transfers, or turned over such property, for which York is liable under section 550 of the Bankruptcy Code.

386. Pursuant to section 502(d) of the Bankruptcy Code, any and all York Claims and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust must be disallowed until such time as York pays to the Trust an amount equal to the aggregate amount of the York Transfers, plus interest thereon and costs.

387. Pursuant to section 502(j) of the Bankruptcy Code, any and all York Claims, and/or claims of its assignees, against the Debtors' chapter 11 estates or the Trust previously allowed by the Debtors or by the Trust, must be reconsidered and disallowed until such time as York pays to the Trust an amount equal to the aggregate amount of the York Transfers.

## PRAYER FOR RELIEF

Based on the foregoing allegations, the Trust requests that this Court grant the following relief:

A. Judgment in favor of the Trust and against each Defendant determining that the Transfers are avoidable in their entirety under applicable law;

B. Judgment in favor of the Trust and against each Defendant directing the Defendant to immediately pay to the Trust, for the benefit of the Debtors' estates, the full amount of the Transfers, plus applicable interest and costs to the maximum extent permitted by law;

C. Judgment in favor of the Trust and against each Defendant disallowing any and all Claims held by each Defendant in their entirety unless and until such time as the Defendant pays to the Trust, for the benefit of the Debtors' estates, the full amount of the avoided Transfers;

D. Alternatively, judgment in favor of the Trust and against some or all of the Defendants jointly and severally to the extent evidence and proof at trial demonstrates a basis for such relief; and

E. Such other and further relief as this Court may deem just and proper.

Dated: October 15, 2026

*/s/ Thomas D. Maxson*

Andrew C. Helman (admitted pro hac vice)
Dentons Bingham Greenebaum LLP
One City Center, Suite 11100
Portland, ME 04101
Phone: (207) 619-0919
Email: andrew.helman@dentons.com

Thomas D. Maxson (Pa. ID 63207)
Dentons Cohen & Grigsby, P.C.
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 297-4706
Email: thomas.maxson@dentons.com

Lauren M. Macksoud (admitted pro hac vice)
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020
Phone: (212) 768-5347
Email: lauren.macksoud@dentons.com

*Counsel for the Pottsville Liquidating Trust*